IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                    *

BARBARA WYCKOFF,                    *

      Plaintiff,                    *

            v.                      *    CIVIL NO.: WDQ-07-0058

STATE OF MARYLAND,                  *
MARYLAND STATE POLICE, ET AL.,
                                    *
      Defendants.
                                    *

*     *     *     *     *     *     *     *     *     *     *     *     *

MEMORANDUM OPINION

Barbara Wyckoff sued her former employer, State of Maryland,

Maryland State Police ("MDSP"), and Homer Rich, an MDSP

Lieutenant, for violations of Title VII of the Civil Rights Act

of 1964 ("Title VII"),[1] 42 U.S.C. § 1983 (2006), Article 24 of

the Maryland Declaration of Rights, and the First and Fourteenth

Amendments of the United States Constitution.

Pending are MDSP and Rich's motions to dismiss.  For the

following reasons, Rich's motion will be granted on Wyckoff's

First Amendment retaliation and Maryland Declaration of Rights

claims, and denied on Wyckoff's Fourteenth Amendment claim.  On

Wyckoff's Title VII claims, MDSP's motion will be granted on

Wyckoff's retaliation and disparate treatment claims, and denied

---

[1] 42 U.S.C. §§ 2000e *et seq.* (2006).

1

on Wyckoff's discriminatory denial of reassignment claim.

I.   Background

Wyckoff was a Trooper First Class assigned to the Prince Frederick barracks in Calvert County, Maryland.  In August 2004, Wyckoff applied for a detective position with the Criminal Investigation Division ("CID").  On October 4, 2004, Rich interviewed her for the position.  At the interview, Wyckoff alleges that Rich told her that although her status as a single woman without children "would work in her favor," there were already enough "girls" in the unit, so she could not be reassigned to CID.  First Am. Compl. ¶¶ 11-12.[2]  On October 7, 2004, Rich informed Wyckoff that Dave Carter had been selected for the position.  On October 8, 2004, Rich allegedly told Sergeant Norma Trass, Wyckoff's supervisor, that there were "too many girls" in the unit to justify putting Wyckoff in the position.  First Am. Compl. ¶ 14.

In November 2004, Wyckoff filed a grievance with the MDSP. First Am. Compl. ¶ 15.  In February 2005, Wyckoff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC").[3]  In August 2005, Wyckoff contacted MDSP

_____

[2] On May 21, 2007, Wyckoff filed an amended complaint. Paper No. 6.  All references are to the amended complaint unless otherwise noted.

[3] On December 26, 2005, Wyckoff filed a second EEOC charge against MDSP for retaliation.  Compl. Ex. A.

Captain Michael Spaulding to inquire about her grievance, and was told not to call him again.  First Am. Compl. ¶ 18.  The following month, Rich filed administrative charges against Wyckoff for a minor accident with a department vehicle.  Wyckoff received several phone calls from MDSP Fair Practice Section Captain Christopher Finn about her grievances and was denied a transfer from the Prince Frederick barracks.  First Am. Compl. ¶ 21.  MDSP also placed Wyckoff on "stress" leave, which was converted to "ordinary" leave.  *Id.*  MDSP then approved Wyckoff's request for medical retirement.

On August 3, 2006, the EEOC determined that there was reasonable cause to believe that MDSP had violated Title VII.  Compl. Ex. B.  On October 16, 2006, Wyckoff received a right to sue notice from the U.S. Department of Justice, Compl. Ex. C., and on January 10, 2007, Wyckoff sued MDSP and Rich.

II.  Analysis

Defendants have moved to dismiss all claims, arguing that: (1) Wyckoff has not established sex discrimination under Title VII against MDSP or § 1983 against Rich; (2) Wyckoff has not alleged sufficient facts to establish an equal protection violation or First Amendment retaliation claim against Rich; and (3) Wyckoff's Maryland constitutional claims against Rich are barred by the Maryland Tort Claims Act ("MTCA").

3

A. Standard of Review

Under Rule 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007).

The court "should view the complaint in a light most favorable to the plaintiff," and "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation and internal quotation marks omitted).  Thus, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic*, 127 S. Ct. at 1965.

Although the notice-pleading requirements of Rule 8(a)(2) are "not onerous," the plaintiff must allege facts that support each element of her claim.  *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003).

In deciding a Rule 12(b)(6) motion, the court will consider

4

the facts stated in the complaint and any incorporated documents. *Biospherics, Inc. v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998).   The court may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action.   *Id*.

B. Sex Discrimination

1. Denial of Reassignment

Wyckoff argues that she was denied a reassignment to the CID detective position because of her sex.   This denial, Wyckoff argues, was an actionable adverse employment action.   MDSP disagrees.

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his . . . terms, conditions, or privileges of employment, because of such individual's . . . sex."   42 U.S.C. § 2000e-2(a)(1) (2006).   Title VII also makes it unlawful "to limit, segregate, or classify . . . employees . . . in any way which would . . . adversely affect [one's] status as an employee, because of such individual's . . . sex."   *Id*. § 2000e-2(a)(2).[4]

If a Title VII plaintiff presents direct evidence of discrimination, "the plaintiff need not establish a prima facie

---

[4] To the extent that Wyckoff argues that MDSP has created a "separate but equal" workplace, *see* Pl.'s Supp. Mem. at 7, those contentions are without merit and accordingly are not a basis for relief.

case because creating an inference of discrimination is unnecessary." *Bashara v. Black Hills Corp.*, 26 F.3d 820, 824 (8th Cir. 1994).

To state a claim for discrimination under Title VII, Wyckoff must demonstrate that she suffered an employment action that "adversely affect[ed] the terms, conditions, or benefits of [her] employment." *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (internal quotation marks omitted). This inquiry focuses on ultimate employment decisions, including "hiring, granting leave, discharging, promoting, and compensating." *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981).

MDSP contends that only reassignments resulting in a "decrease in compensation, job title, level of responsibility, or opportunity for promotion" are adverse employment actions. Def.'s Supp. Mem. at 6 (*quoting Booz-Allen*, 368 F.3d at 376) (internal quotation marks omitted).  Therefore, Wyckoff must establish that the denial of her reassignment "had a significant detrimental effect on her employment status."  Def.'s Reply at 1.

MDSP contends that a CID detective's job is equivalent to Wyckoff's rank of Trooper First Class.  Therefore, Wyckoff's failure to receive the detective job was not an adverse employment action.  MDSP's reliance on employee reassignment cases is misplaced.  Although styled a "reassignment," Wyckoff's

6

application and interview for the CID detective job are similar
to an internal promotion process.  The detrimental effect
analysis is usually encountered in involuntary reassignment
cases.  *See Booz-Hamilton*, 368 F.3d at 377 ("[A]n employee's
dissatisfaction with this or that aspect of work does not mean an
employer has committed an actionable adverse action.").

Wyckoff's allegations that the detective position was a
"status" promotion and that she lost training, supervisory, and
future promotion opportunities as a result of MDSP's denial of
her application state a Title VII claim.[5]  First Am. Compl. ¶¶ 9-
12, 14.

2. Retaliation

Wyckoff also argues that MDSP retaliated against her for
complaining about gender discrimination.  To establish a Title
VII retaliation claim, Wyckoff must demonstrate that: (1) she
engaged in a protected activity; (2) MDSP acted adversely against
her; and (3) there was a causal connection between the protected
activity and the adverse action.  *Holland v. Washington Homes,
Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).  Wyckoff's filing of the
internal charge and EEOC charge are protected activities.  *See
Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th

---

[5] Beyond alleging that a male was selected for the CID
detective job over her, Wyckoff has not presented any evidence
that she was treated differently from similarly qualified male
officers.  Thus, Wyckoff's disparate treatment claim will be
dismissed.

Cir. 1998).  The parties dispute whether Wyckoff suffered any adverse action as a result of filing the charges.

In *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405 (2006), the Supreme Court held that Title VII's anti-retaliation provision, 42 U.S.C. 2000e-3, protected against activity "beyond workplace-related or employment-related retaliatory acts and harms." *Burlington Northern*, 126 S. Ct. at 2414.  The Court confined the limits of the clause to retaliation that "produces an injury or harm," and adopted a material adversity standard that asks whether the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2414-15 (internal quotation marks omitted).  The Court cautioned that reporting discriminatory behavior does not "immunize [an] employee from those petty slights or minor annoyances that often take place at work." *Id.* at 2415.

Wyckoff alleges that because of her previous complaints, Rich brought an administrative charge against her for damaging a department vehicle.  Wyckoff contends that the charge included an enhanced penalty and that other officers were not treated similarly when they damaged a department vehicle.  That an administrative charge was filed does not equate to material adversity.  Wyckoff does not explain how the charge was resolved or whether it affected her employment.  Without more, the filing

of an administrative charge is not a materially adverse action.
*Cf. Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir.
1996) (filing criminal charges against employee is adverse
employment action).

Wyckoff also contends that MDSP retaliated against her when
she was denied a permanent reassignment to an alternate barracks
not under Lieutenant Rich's command.  She argues that she was
only offered a temporary reassignment, which did not guarantee
against a future transfer.  Wyckoff argues that multiple phone
calls she received from Captain Finn advising her that the
complaints "were not good for her" compounded the difficulty of
staying at the barracks.  Pl.'s Supp. Mem. at 11.  Wyckoff's
refusal to take the offered temporary reassignment cannot be
considered materially adverse because she alleges no injury
caused by her continued employment at the Prince Frederick
barracks.  Moreover, Finn was required to investigate Wyckoff's
complaint as part of his fair practices duties.  *See* Md. Code
Ann., State Pers. & Pens. § 5-207(c)(2) (West 2006).  Taken
together, no reasonable jury could consider these actions
materially adverse.

Wyckoff also argues that MDSP put her on "stress leave,"
which reduced her accrued leave time.  Wyckoff does not explain
why she was placed on leave, how this treatment differed from
that afforded other employees, or how this affected her

employment.  That Wyckoff lost days from her personal leave bank
is not materially adverse.  *Cf. Burlington Northern*, 126 S. Ct.
at 2415 (excluding employee from weekly training lunch tied to
professional advancement is likely materially adverse).
Accordingly, MDSP's motion to dismiss Wyckoff's retaliation claim
will be granted.

C. Equal Protection

Wyckoff alleges that Rich engaged in sex discrimination in
violation of the Equal Protection Clause of the Fourteenth
Amendment and 42 U.S.C. § 1983 by considering her gender in
denying her the detective job.  Rich contends that Wyckoff does
not have a cause of action because the denial of her reassignment
was not an adverse employment action.

Gender discrimination by employees acting under color of
state law is actionable under § 1983.  *Beardsley v. Webb*, 30 F.3d
524, 529 (4th Cir. 1994).  As previously discussed, the denial of
Wyckoff's application for the detective job was an adverse
employment action.  Wyckoff has also alleged that Rich was acting
under color of state law when he informed her that although she
was a good candidate for the job, there were already enough
"girls" in CID.  First Am. Compl. ¶¶ 10-12.  This evidence is
sufficient to survive Rich's motion to dismiss.

D. First Amendment Retaliation

Wyckoff also brings a First Amendment retaliation claim

10

against Rich under § 1983.  She contends that filing an internal
claim and an EEOC charge were protected First Amendment
activities on matters of public concern.  Pl.'s Supp. Mem. at 12.
Wyckoff alleges that Rich filed administrative charges against
her in retaliation for exercising that protected right.
Alternatively, Wyckoff argues that even if filing an EEOC charge
is not a matter of public concern, her good faith belief in the
substance of the charge affords her constitutional protection.[6]

Rich counters that the EEOC charge is not a matter of public
concern that is protected by the First Amendment, and she has not
alleged a causal connection to the administrative charge or any
effect on protected speech caused by the charge.

To state a claim for First Amendment retaliation, Wyckoff
must establish that: (1) her speech relates to a matter of public
concern; (2) Rich's retaliation adversely affected her speech;
and (3) there was a causal connection between her speech and the
retaliation.  *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686
(4th Cir. 2000).

Whether an employee's speech addresses a matter of public
concern is determined by the "content, form, and context of a

---

[6] To the extent that Wyckoff asks the Court to find her
speech protected because the Supreme Court would not require it
to be a matter of public concern, her claim is without merit.  An
employee's speech must be addressed to a matter of public concern
for First Amendment protections to apply.  *See, e.g.*, *Stroman v.
Colleton County Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992).

11

given statement." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983).

Matters that are directed at an employee's self-interest, such as

personal grievances or employment conditions, are not matters of

public concern. *Stroman v. Colleton County Sch. Dist.*, 981 F.2d

152, 156 (4th Cir. 1992). Although statements made by public

employees in the scope of their official duties are not

protected, *see Garcetti v. Ceballos*, 126 S. Ct. 1951, 1960

(2006), a public employee speaking as a citizen has a right to

raise matters of public concern. *Pickering v. Bd. of Educ.*, 391

U.S. 563, 568 (1968). The fact that an employee's speech is made

in private or concerns the subject matter of her employment is

not dispositive. *Garcetti*, 126 S. Ct. at 1959.

All parties rely on *Campbell v. Galloway*, 483 F.3d 258 (4th

Cir. 2007). In *Campbell*, a female police officer was terminated

after writing a memorandum addressing her complaints about the

workplace. *Id.* at 263. The memorandum primarily focused on

perceived slights, such as not being invited to breakfast with

other officers, but also raised multiple sexual harassment

incidents. *Id.* While declining to find that sexual harassment

contentions were *per se* matters of public concern, the *Campbell*

court determined that the officer's complaints sufficed. *Id.* at

269. The court emphasized that the officer's complaints raised

issues concerning the general public, in addition to treatment of

her and her fellow female officers. *Id.* at 270.

12

Rich argues that Wyckoff's EEOC complaint was personal to her and was not motivated by a concern for the public interest. Of the nine allegations made by Wyckoff in her EEOC charge, Rich identifies only one that refers to someone other than Wyckoff. The charge alleged, "[t]here has been an ongoing systematic and pattern and practice of discrimination against me and other females," Compl. Ex. A, is in Rich's view too vague and conclusory to rise to the level of public concern.  Rich also argues that the sexist comments alleged by Wyckoff, that there were already "too many girls" in CID, adds little to the calculus.  Rich compares the two claims alleged by Wyckoff with the multiple harassment claims alleged by the officer in *Campbell*, and asserts that Wyckoff's content "pales in comparison."  Def.'s Reply at 5.

Although tallying the number and specificity of discrimination claims alleged may help determine whether the complained-of conduct is a matter of public concern, it is not dispositive.  In *Campbell*, the Fourth Circuit declined to follow other circuits that require retaliation plaintiffs to complain about a pattern of discrimination.  *Campbell*, 483 F.3d at 268-69. *But see, e.g.*, *David v. City of Denver*, 101 F.3d 1344, 1356 (10th Cir. 1996) (sexual harassment complaints must address widespread practices rather than personal grievances).  Rather than adopting a test that distinguishes between personal and systemic

discrimination, the court determined that the inquiry "depends on the content, form and context of the complaint." *Id.* at 269. Viewing Wyckoff's allegations as true, her complaints about sex discrimination are matters of public concern.

Rich allegedly advised Wyckoff that although she was qualified, she could not be assigned to the position because there were already enough "girls" in CID.  First Am. Compl. ¶ 12. Wyckoff also alleges that Rich informed her supervisor that there were "too many girls" in CID to justify Wyckoff's assignment there.  *Id.* ¶ 13.  Wyckoff's EEOC allegations, if true, demonstrate at least an informal policy of excluding women from the department.  Discriminatory promotion processes within public police departments are matters of public concern.

Although Wyckoff's EEOC filing addresses a matter of public concern, she has not demonstrated that Rich's alleged retaliation rose above trivial or *de minimis* harm.  *Suarez*, 202 F.3d at 686. Wyckoff contends that Rich instituted administrative charges against her in retaliation for her protected activity.  Wyckoff does not discuss the severity of the charge or the outcome, and does not contend that it led to any suppression of protected speech.  Moreover, Wyckoff has not demonstrated a causal link between the administrative charge and the filing of her EEOC complaint.  Accordingly, Wyckoff's First Amendment retaliation claim against Rich will be dismissed.

14

E. Maryland Declaration of Rights

Wyckoff contends that Rich violated Article 24 of the Maryland Declaration of Rights[7] through his discriminatory actions against her.  Rich counters that Wyckoff has not satisfied the conditions of the MTCA that govern her claims.

In Maryland, state employees are entitled to immunity under the MTCA for constitutional torts committed within the scope of state employment and made without malice or gross negligence. *Lee v. Cline*, 384 Md. 245, 266, 863 A.2d 297, 310 (Md. 2004). Under the MTCA, plaintiffs must file a claim with the State Treasurer within one year after the injury.  Md. Code Ann., State Gov't § 12-106(b) (West 2006).  Rich argues that Wyckoff's failure to file a claim with the Treasurer bars her Maryland constitutional claims.  Wyckoff counters that filing the EEOC charge put Rich on notice of the claims and substantially complied with the MTCA.

Whether Wyckoff's claims are barred by the MTCA's procedural requirements is irrelevant because Wyckoff's pleadings do not state any Maryland constitutional torts that were committed and she does not raise any in her Response.  Accordingly, Rich's

---

[7] Article 24 provides "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."  Md. Const. Decl. of Rts. art. 24.

motion to dismiss Wyckoff's Maryland constitutional claims will be granted.

## III. Conclusion

For the reasons discussed above, Defendants' motions to dismiss will be granted on Wyckoff's disparate treatment, retaliation, First Amendment retaliation, and Maryland constitutional claims, and denied on her discriminatory denial of reassignment and Fourteenth Amendment claims.


October 1, 2007                           /s/
Date                              William D. Quarles, Jr.
                                  United States District Judge